ORAL ARGUMENT NOT YET SCHEDULED
Nos. 23-7031, 23-7032

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

NEXTERA ENERGY GLOBAL HOLDINGS B.V., ET AL.,

*Petitioners-Appellees*,

v.

KINGDOM OF SPAIN,

*Respondent-Appellant*.

9REN HOLDING S.À.R.L.,

*Petitioner-Appellee*,

v.

KINGDOM OF SPAIN,

*Respondent-Appellant*.

On Appeal from the United States District Court
for the District of Columbia
Nos. 1:19-cv-1618 and 1:19-cv-1871, Hon. Tanya S. Chutkan

**FINAL BRIEF OF BLASKET RENEWABLE INVESTMENTS LLC
AS *AMICUS CURIAE* IN SUPPORT OF APPELLEES AND AFFIRMANCE**

Matthew D. McGill
Matthew S. Rozen
Jeffrey Liu
Lavi M. Ben Dor*
Samuel C. Speers
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 887-3680
MMcGill@gibsondunn.com

*Counsel for Amicus Curiae Blasket Renewable Investments LLC*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, Blasket Renewable Investments LLC certifies that Blasket is a Delaware limited-liability company.  Trinity Investments DAC, an Irish designated activity company, is the sole managing member of Blasket and owns 60% of its equity.  Blasket Investments DAC, an Irish designated activity company, owns the remaining 40% of Blasket's equity.  No publicly held corporation owns more than 10% of Blasket.

### CERTIFICATE REGARDING SEPARATE *AMICUS* BRIEF

Pursuant to D.C. Circuit Rule 29(d), Blasket Renewable Investments LLC ("Blasket") certifies that a separate brief is necessary to provide its unique perspective on why the ICSID Convention and its implementing legislation, 22 U.S.C. § 1650a(a), support the exercise of jurisdiction over these actions under the Foreign Sovereign Immunities Act ("FSIA"). Blasket is one many investors that hold arbitral awards against the Kingdom of Spain ("Spain") similar to the ones at issue in the *NextEra* and *9REN* appeals. But Blasket is uniquely situated because it holds title and owns rights in arbitral awards that are subject to enforcement under both the ICSID Convention (as in the *NextEra* and *9REN* appeals) and the New York Convention.

Blasket's enforcement action under the New York Convention is the subject of a separate appeal that involves the same principal issue as the *NextEra* and *9REN* appeals and is being briefed and argued concurrently before the same panel. In that appeal, Blasket has addressed Spain's principal argument—that European Union law negates Spain's consent to arbitrate—by explaining why an arbitral tribunal's determination that Spain consented to arbitration is not subject to collateral attack in U.S. courts. The purpose of this brief is not to repeat those arguments, but rather to highlight the unique features of the ICSID Convention that make Spain's collateral attacks particularly inappropriate in the *NextEra* and *9REN* cases and in Blasket's

other cases arising under the ICSID Convention.  Blasket is the only *amicus* whose brief is devoted to highlighting the differences between the ICSID Convention and the New York Convention, and it is uniquely positioned to address those differences and their impact on these appeals because Blasket and its predecessors in interest, through the undersigned counsel, have briefed those issues in the contexts of both Conventions.

## CERTIFICATE AS TO PARTIES,
## RULINGS UNDER REVIEW, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), *amicus curiae* Blasket Renewable Investments LLC ("Blasket") certifies the following:

**(a) Parties and *Amici*.** All parties consent to Blasket's participation as *amicus curiae* in Nos. 23-7031 and 23-7032. Parties, intervenors, and *amici* appearing before the district court and in this Court are listed in the Brief for Appellant the Kingdom of Spain ("Spain") and the Brief for Appellees NextEra Energy Global Holdings B.V., et al. ("NextEra"), and 9REN Holding S.À.R.L. ("9REN"). *Amici* in this Court also include the Chamber of Commerce, MOL Hungarian Oil and Gas PLC, and the International Arbitration Scholars and Practitioners.

**(b) Rulings Under Review.** Reference to the rulings at issue in Nos. 23-7031 and 23-7032 appears in the Brief for Appellant Spain.

**(c) Related Cases.** These appeals are being briefed and argued concurrently with the appeal before this Court in *Blasket Renewable Investments LLC v. Kingdom of Spain*, No. 23-7038. No. 23-7031 was previously before the district court as *NextEra Energy Global Holdings B.V. v. Kingdom of Spain*, No. 19-cv-1618. No. 23-7032 was previously before the district court as *9REN Holding S.À.R.L. v. Kingdom of Spain*, No. 19-cv-1871. Neither case has previously been before this Court. In its brief, Spain has identified several cases that present similar issues to these appeals and also involve Spain.

iv

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................................ i

CERTIFICATE REGARDING SEPARATE *AMICUS* BRIEF .............................. ii

CERTIFICATE AS TO PARTIES, RULINGS UNDER REVIEW, AND
RELATED CASES........................................................................................... iv

TABLE OF AUTHORITIES ................................................................................ vi

GLOSSARY OF ABBREVIATIONS ....................................................................x

STATEMENT OF INTEREST OF *AMICUS CURIAE*..........................................1

INTRODUCTION AND SUMMARY OF ARGUMENT .......................................3

ARGUMENT .........................................................................................................7

I.    Spain Waived Its Jurisdictional Immunity By Joining The
ICSID Convention .........................................................................................7

II.   The Arbitration Exception Applies Because ICSID Tribunals' Jurisdictional
Decisions Are Entitled To Full Faith And Credit.........................................13

CONCLUSION ....................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. McCurry*,
  449 U.S. 90 (1980)................................................................14

*Blinder, Robinson & Co. v. SEC*,
  837 F.2d 1099 (D.C. Cir. 1988)................................................17, 18

*Blue Ridge Invs., L.L.C. v. Republic of Argentina*,
  735 F.3d 72 (2d Cir. 2013) .............................................7, 10

*Bruesewitz v. Wyeth LLC*,
  562 U.S. 223 (2011).........................................................9

*In re Bulldog Trucking, Inc.*,
  147 F.3d 347 (4th Cir. 1998) .............................................18

*Carr v. District of Columbia*,
  646 F.2d 599 (D.C. Cir. 1980).............................................16

*ConocoPhillips Petrozuata B.V. v. Bolivarian Republic of Venezuela*,
  628 F. Supp. 3d 1 (D.D.C. 2022)........................................7

*Cont'l Cas. Co. v. Argentine Republic*,
  893 F. Supp. 2d 747 (E.D. Va. 2012) ................................8

*Durfee v. Duke*,
  375 U.S. 106 (1963)........................................................18

*Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*,
  456 U.S. 694 (1982)........................................................16

*Jerez v. Republic of Cuba*,
  775 F.3d 419 (D.C. Cir. 2014).........................................16, 17

*Kalb v. Feuerstein*,
  308 U.S. 433 (1940)........................................................18

**Page(s)**

*Micula v. Gov't of Romania*,
    104 F. Supp. 3d 42 (D.D.C. 2015) .......................................................4

*Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*,
    863 F.3d 96 (2d Cir. 2017) .....................................................5, 14, 17

*Owner-Operator Indep. Drivers Ass'n, Inc. v. U.S. Dep't of Transp.*,
    724 F.3d 230 (D.C. Cir. 2013) ...........................................................12

*Republic of Argentina v. NML Cap., Ltd.*,
    573 U.S. 134 (2014) .............................................................................8

*San Remo Hotel, L.P. v. City & Cnty. of San Francisco*,
    545 U.S. 323 (2005) ...........................................................................14

*Saudi Arabia v. Nelson*,
    507 U.S. 349 (1993) .............................................................................6

*Tatneft v. Ukraine*,
    771 F. App'x 9 (D.C. Cir. 2019) (per curiam) ....................................7

*TECO Guatemala Holdings, LLC v. Republic of Guatemala*,
    414 F. Supp. 3d 94 (D.D.C. 2019) ....................................................17

*Tethyan Copper Co. Pty Ltd. v. Islamic Republic of Pakistan*,
    590 F. Supp. 3d 262 (D.D.C. 2022) .........................................9, 16, 17

*Tidewater Inv. SRL v. Bolivarian Republic of Venezuela*,
    2018 WL 6605633 (D.D.C. Dec. 17, 2018) ..................................5, 16

*Underwriters Nat'l Assurance Co. v. N.C. Life & Accident & Health*
    *Ins. Guar. Ass'n*,
    455 U.S. 691 (1982) ...........................................................................16

*V.L. v. E.L.*,
    577 U.S. 404 (2016) ...........................................................................16

*Yamaha Corp. of Am. v. United States*,
    961 F.2d 245 (D.C. Cir. 1992) ...........................................................15

**Page(s)**

**Statutes**

9 U.S.C. § 9 ....................................................................................5

9 U.S.C. § 10 ..................................................................................5

9 U.S.C. §§ 201-208 .......................................................................2

22 U.S.C. § 1650a ...........................................................1, 2, 4, 5, 14, 15

28 U.S.C. § 1330 .........................................................................5, 6

28 U.S.C. § 1391 .............................................................................5

28 U.S.C. § 1604 .........................................................................8, 12

28 U.S.C. § 1605 ................................................6, 7, 8, 11, 13

28 U.S.C. § 1606 .............................................................................8

28 U.S.C. § 1607 .............................................................................8

28 U.S.C. § 1608 .............................................................................5

28 U.S.C. § 1609 .............................................................................9

28 U.S.C. § 1610 .............................................................................9

28 U.S.C. § 1611 .............................................................................9

**Treaties**

ICSID Convention, pmbl. .................................................................3

ICSID Convention, art. 25 ............................................................3, 8

ICSID Convention, art. 41 ....................................................3, 9, 14, 15

ICSID Convention, art. 48 ...............................................................3

ICSID Convention, art. 52 ............................................................3, 4

ICSID Convention, art. 53 ....................................................3, 4, 9, 12

**Page(s)**

ICSID Convention, art. 54 .................................................................4, 7

ICSID Convention, art. 55 ....................................................................8

**Foreign Judicial and Arbitral Decisions**

*Hydro Energy 1 S.à.r.l. v. Kingdom of Spain*, ICSID Case No. ARB/15/42,
  Decision on Jurisdiction, Liability, and Directions on Quantum,
  bit.ly/44K850L.................................................................................15

*Infrastructure Servs. Luxembourg S.À.R.L. v. Kingdom of Spain*,
  [2023] EWHC 1226 (Comm), bit.ly/45wjoL ...............................10, 12

*Kingdom of Spain v. Infrastructure Servs. Luxembourg S.À.R.L.*,
  [2023] HCA 11, bit.ly/3PDbee9 ................................................10, 11

*S.A.R.L. Benvenuti & Bonfant v. People's Republic of the Congo*,
  ICSID Case No. ARB/77/2, Paris Ct. App. Dec. (June 26, 1981),
  1 ICSID Rep. 369.............................................................................10

*Société Ouest Africaine des Bétons Industriels (SOABI) v. Senegal*,
  ICSID Case No. ARB/82/1, French Ct. of Cassation Dec. (June 11, 1991),
  2 ICSID Rep. 341.............................................................................11

*Sodexo Pass Int'l SAS v. Hungary*, CIV-2020-485-734,
  [2021] NZHC 371 (Dec. 10, 2021), bit.ly/35SaBcf .........................11

**Other Authorities**

ICSID, *Cases Database*, bit.ly/3JGZCTV.................................................8

ICSID, *List of Member States - ICSID/3*, bit.ly/3w4CZTn .....................3

## GLOSSARY OF ABBREVIATIONS

ECT                Energy Charter Treaty

EU                 European Union

FAA                Federal Arbitration Act

FSIA               Foreign Sovereign Immunities Act

ICSID              International Center for Settlement of Investment Disputes

## STATEMENT OF INTEREST OF *AMICUS CURIAE*[1]

*NextEra* and *9REN* involve investment disputes brought by European Union ("EU")-based investors under the Energy Charter Treaty ("ECT") in response to the Kingdom of Spain's ("Spain") revocation of and retrenchment on renewable energy incentives. The plaintiffs and Spain arbitrated their disputes before the International Center for Settlement of Investment Disputes ("ICSID"), and plaintiffs now seek to enforce their awards pursuant to the ICSID Convention and its implementing legislation, 22 U.S.C. § 1650a.

*Amicus curiae* Blasket Renewable Investments LLC ("Blasket") holds title and owns all rights in four ICSID awards against Spain—based on the same violations of the ECT—that are the subject of enforcement proceedings in this

---

[1] Blasket Renewable Investments LLC ("Blasket") submits this brief exclusively in *NextEra Energy Global Holdings B.V. v. Kingdom of Spain*, No. 23-7031, and *9REN Holding S.à.r.l. v. Kingdom of Spain*, No. 23-7032. Blasket is the Appellant in a separate, related appeal, *Blasket Renewable Investments LLC v. Kingdom of Spain*, No. 23-7038, that is being briefed and argued concurrently with the *NextEra* and *9REN* appeals before the same panel. But the appeals have not been consolidated, Blasket is not a party in *NextEra* or *9REN*, and as further explained herein, this brief is limited to issues that arise exclusively in the *NextEra* and *9REN* appeals and not the *Blasket* appeal. No party to *NextEra* or *9REN* authored this brief in whole or in part. No party or party's counsel contributed money that was intended to fund preparing or submitting this brief, and no person or entity—other than *amicus* or its counsel—made a monetary contribution intended to fund preparing or submitting the brief. Counsel for NextEra and 9REN and counsel for Spain consent to the filing of this brief.

1

Circuit.[2]  Blasket files this brief to explain why Spain's assertion of sovereign immunity is particularly misplaced in actions to enforce ICSID awards.

Blasket also holds title and owns all rights in a fifth award that is already before this Court in Blasket's own, separate appeal, which is being briefed and argued concurrently with the *NextEra* and *9REN* appeals before the same panel. That award was arbitrated under the UNCITRAL Rules and is therefore subject to enforcement under the New York Convention, as implemented through Chapter 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201-208, rather than the ICSID Convention, as implemented through 22 U.S.C. § 1650a.

As further explained herein, several aspects of the ICSID Convention make Spain's attempt to relitigate its consent to arbitrate under the ECT particularly inappropriate in the context of an ICSID enforcement action.  Those aspects of the ICSID Convention are directly relevant to the *NextEra* and *9REN* appeals and to Blasket's four enforcement actions under the ICSID Convention, but Blasket cannot vindicate that issue in its own appeal because it arises under the New York Convention.  Blasket thus seeks to apprise the Court of arguments in favor of exercising jurisdiction over ICSID award-enforcement actions that cannot be raised

---

[2]    *See BayWa r.e. AG v. Kingdom of Spain*, No. 1:22-cv-2403 (D.D.C.); *Hydro Energy 1, S.à.r.l. v. Kingdom of Spain*, No. 1:21-cv-2463 (D.D.C.); *Infrared Env't Infrastructure GP Ltd. v. Kingdom of Spain*, No. 1:20-cv-817 (D.D.C.); *RREEF Infrastructure (G.P.) Ltd. v. Kingdom of Spain*, No. 1:19-cv-3783 (D.D.C.).

in the *Blasket* appeal and to ensure that the Court gives full effect to the ICSID Convention and its implementing legislation.

## INTRODUCTION AND SUMMARY OF ARGUMENT

These actions are just two of many in which Spain is attempting to evade its obligations under the ICSID Convention—and in which Spain is attempting to persuade U.S. courts to renege on the United States' own obligations under that treaty. The ICSID Convention is a treaty among 156 nations—including Spain, almost every other EU member state, and the United States, *see* ICSID, *List of Member States – ICSID/3*, bit.ly/3w4CZTn—that provides a comprehensive framework for arbitrating investment disputes "between Contracting States and nationals of other Contracting States." ICSID Convention, pmbl. Arbitral tribunals constituted under the ICSID Convention are responsible for conclusively deciding not only the merits of any dispute submitted to them, *id.*, art. 48, but also all issues pertaining to their jurisdiction, including disputes about the parties' consent to arbitrate, *id.*, arts. 25, 41. By signing the ICSID Convention, Spain agreed to "abide by" and "comply with" all awards issued pursuant thereto. *Id.*, art. 53(1).

The ICSID Convention provides for only a limited review of arbitral awards and assigns that power to an ad hoc annulment committee. ICSID Convention, art. 52. Under Article 52 of the Convention, that committee—not the courts of any Contracting State—decides whether an award should be set aside on the ground that the

tribunal was not properly constituted, exceeded its power, acted corruptly, seriously departed from a fundamental rule of procedure, or failed to state the reasons on which the award was based. *Id.*, art. 52(1). In assigning this role to the annulment committee, the ICSID Convention differs from other regimes like the New York Convention, in which the enforcing court can determine if the award is subject to challenge. Spain and the other parties to the Convention thus agreed that an ICSID arbitration award would be "binding" and enforceable in the courts of any Contracting State—including the United States—as "final judgment[s]" without being "subject to any appeal or to any other remedy except those provided for in th[e] Convention." *Id.*, arts. 53(1), 54(1).

Recognition and enforcement of ICSID awards in the United States is governed by 22 U.S.C. § 1650a, which implements the treaty obligations of the United States, as a contracting party to the ICSID Convention, to ensure that U.S. courts treat an ICSID award "as if it were a final judgment" of a state court. ICSID Convention, art. 54(1). Section 1650a thus provides, in relevant part, that "[t]he pecuniary obligations imposed by [an ICSID] award shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States." 22 U.S.C. § 1650a(a). Enforcement proceedings are commenced by "fil[ing] a plenary action under section 1650a" to "convert [the] award into an enforceable judgment" in federal court, *Micula v.*

*Gov't of Romania*, 104 F. Supp. 3d 42, 49-51 (D.D.C. 2015), in compliance with the Federal Rules of Civil Procedure and the FSIA's personal jurisdiction, service, and venue requirements, 28 U.S.C. §§ 1330, 1391(f), 1608; *see Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 100, 117-20 (2d Cir. 2017).  Further, the statute specifies that even the limited grounds for vacating or refusing confirmation of an ordinary arbitration award under the FAA, 9 U.S.C. §§ 9-10, "shall not apply to enforcement of awards rendered pursuant to the [ICSID] convention," 22 U.S.C. § 1650a(a).  "By expressly precluding the FAA's application to enforcement of ICSID Convention awards, Congress intended to make these grounds of attack unavailable to ICSID award-debtors in federal court enforcement proceedings."  *Mobil Cerro Negro*, 863 F.3d at 120-21.

Section 1650a thus envisions a "perfunctory role … for federal district courts," *Tidewater Inv. SRL v. Bolivarian Republic of Venezuela*, 2018 WL 6605633, at *6 (D.D.C. Dec. 17, 2018), in which an award debtor "[is] not … permitted to make substantive challenges to the award," *Mobil Cerro Negro*, 863 F.3d at 118. District courts "are … not permitted to examine an ICSID award's merits, its compliance with international law, or the ICSID tribunal's jurisdiction to render the award."  *Id*. at 102.  Instead, courts "may do no more than examine the judgment's authenticity and enforce the obligations imposed by the award."  *Id*.

5

Spain seeks to avoid these clear limitations by framing its challenge to the awards against it as an argument that the U.S. courts lack subject-matter jurisdiction under the FSIA. But the FSIA creates subject-matter jurisdiction over arbitration enforcement actions under the ICSID Convention without regard to any challenge to the arbitral tribunal's determination that the respondent lawfully consented to binding arbitration. The FSIA grants federal courts subject-matter jurisdiction over an action against a foreign state if one of the FSIA's enumerated exceptions from a foreign state's sovereign immunity applies. *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993); 28 U.S.C. § 1330(a). Two such exceptions—the waiver exception, 28 U.S.C. § 1605(a)(1), and the arbitration exception, *id.* § 1605(a)(6)—independently establish jurisdiction here, each without regard to any challenge to Spain's consent to arbitrate this dispute. While those exceptions each apply in both the New York Convention and ICSID contexts, several aspects of the ICSID Convention make the application of those exceptions especially clear in ICSID enforcement actions. This Court should therefore affirm the district court's jurisdictional ruling in *NextEra* and *9REN* without reaching Spain's EU-law arguments, which have no place here under the ICSID Convention's streamlined enforcement scheme.

## ARGUMENT

### I.     Spain Waived Its Jurisdictional Immunity By Joining The ICSID Convention

The FSIA's waiver exception confers jurisdiction when a foreign state "waive[s] its immunity" from suit "either explicitly or by implication." 28 U.S.C. § 1605(a)(1). When a foreign state joins a treaty that "contemplate[s] arbitration-enforcement actions in other signatory countries, including the United States," it "waives its immunity from arbitration-enforcement actions" under the FSIA by implication. *Tatneft v. Ukraine*, 771 F. App'x 9, 10 (D.C. Cir. 2019) (per curiam).

The ICSID Convention—no less than the New York Convention—clearly satisfies this standard because Contracting States each agree to "enforce the pecuniary obligations imposed by [an] award within [their] territories as if it were a final judgment of a court in that State." ICSID Convention, art. 54(1). Contracting States thus necessarily "'contemplat[e] enforcement actions in other Contracting States,'" including the United States," *Blue Ridge Invs., L.L.C. v. Republic of Argentina*, 735 F.3d 72, 84 (2d Cir. 2013) (alteration omitted), not just in their own courts, as Spain contends, Appellant Br. 47-48. As a result, multiple courts have recognized that Contracting States "waiv[e] [their] sovereign immunity" from enforcement of an ICSID award "by becoming a party to the ICSID Convention." *Blue Ridge*, 735 F.3d at 84; *see also ConocoPhillips Petrozuata B.V. v. Bolivarian Republic of Venezuela*, 628 F. Supp. 3d 1, 7 (D.D.C. 2022) (concluding that "Venezuela implicitly waived

its sovereign immunity … by becoming a Contracting State to the ICSID Convention" and observing that "[t]o hold otherwise would be to disrespect Venezuela's choice (at the time) to be a Contracting State"); *cf. Cont'l Cas. Co. v. Argentine Republic*, 893 F. Supp. 2d 747, 751 (E.D. Va. 2012) (noting that courts have long "recognized that a foreign state's entering into the ICSID Convention waived foreign sovereign immunity").

Several additional unique features of the ICSID Convention further support a waiver of immunity from suit.

*First*, the ICSID Convention applies exclusively to disputes with foreign states, ICSID Convention, art. 25(1), and the state party is virtually always the respondent, *see* ICSID, *Cases Database*, bit.ly/3JGZCTV.  States that join the Convention thus plainly understand that they are subjecting *themselves* to the Convention's enforcement regime whenever a tribunal determines that it has jurisdiction and issues an award.

*Second*, the ICSID Convention expressly preserves the "immunity" of foreign state property "from execution," ICSID Convention, art. 55, but conspicuously omits a similar carveout for immunity from jurisdiction.  These "two kinds of immunity" are distinct.  *Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134, 142 (2014). Jurisdictional immunity protects states from suit, 28 U.S.C. §§ 1604-1607, while

8

execution immunity protects state assets from seizure, *id*. §§ 1609-1611.  Spain invokes only immunity from suit, Appellant Br. 6, 29-30, but the ICSID Convention does not preserve that immunity.  Instead, by expressly preserving execution immunity without mentioning immunity from suit, the Convention makes clear that the latter is not preserved.  If the drafters "intended to … preserv[e]" both, "it would be strange to mention specifically only [one], and leave the [other] to implication." *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 232 (2011).

*Third*, the ICSID Convention itself expressly assigns questions of arbitrability—including whether the parties have agreed to arbitrate—to the arbitral tribunal, without any possibility of review by an enforcing court.  "The Tribunal shall be the judge of its own competence," and shall consider "[*a*]*ny objection* ... that [a] dispute is not within the jurisdiction of [ICSID], or ... the competence of the Tribunal."  ICSID Convention, art. 41 (emphasis added).  The Tribunal's determinations on that subject are "binding" and not "subject to any appeal or to *any other remedy* except those provided for in th[e] Convention," which do not include judicial review.  *Id.*, arts. 53(1), 54(1) (emphasis added).  "Thus, ICSID's jurisdictional power—as agreed to by [Spain's] signature on the Treaty—renders binding on [U.S. courts] the Tribunal's arbitrability determination." *Tethyan Copper Co. Pty Ltd. v. Islamic Republic of Pakistan*, 590 F. Supp. 3d 262, 275 (D.D.C. 2022).

This feature of the ICSID Convention is significant because it undercuts Spain's argument that an implicit waiver "would not apply without an agreement to arbitrate"—and, in particular, without an agreement that a reviewing court deems valid on *de novo* review.  Appellant Br. 49-50.  A foreign state that joins the Convention fully contemplates that the arbitral tribunal will make the final decision as to whether it agreed to arbitrate.  Contracting States understand and agree, in other words, that they will be subject to worldwide enforcement whenever an ICSID tribunal determines—*rightly or wrongly*—that the dispute is subject to arbitration.  The waiver thus cannot depend on whether the enforcing court later determines that the tribunal's arbitrability determination is correct.  The waiver occurs "by becoming a party to the ICSID Convention," *Blue Ridge*, 735 F.3d at 84, not by agreeing to arbitrate.

*Fourth*, given the ICSID Convention's clear text, an international consensus has emerged—including in several common-law countries with similar immunity regimes to the FSIA—that joining the Convention suffices to waive immunity from suit.  *See Infrastructure Servs. Luxembourg S.À.R.L. v. Kingdom of Spain*, [2023] EWHC 1226 (Comm) ¶¶ 67, 91-103, bit.ly/45wjoL2 (UK Commercial Court); *Kingdom of Spain v. Infrastructure Servs. Luxembourg S.À.R.L.*, [2023] HCA 11 ¶ 65, bit.ly/3PDbee9 (High Court of Australia) (citing *S.A.R.L. Benvenuti & Bonfant v. People's Republic of the Congo*, ICSID Case No. ARB/77/2, Paris Ct. App. Dec.

(June 26, 1981), 1 ICSID Rep. 369 (Paris Court of Appeals); *Société Ouest Africaine des Bétons Industriels (SOABI) v. Senegal*, ICSID Case No. ARB/82/1, French Ct. of Cassation Dec. (June 11, 1991), 2 ICSID Rep. 341 (French Court of Cassation)); *Sodexo Pass Int'l SAS v. Hungary*, CIV-2020-485-734, [2021] NZHC 371 ¶¶ 23, 25 (Dec. 10, 2021), bit.ly/35SaBcf (High Court of New Zealand).

The High Court of Australia—Australia's supreme judicial body—recently joined this consensus, concluding that "the effect of Spain's agreement" to the IC-SID Convention was a "waiver of foreign State immunity from the jurisdiction of the courts of Australia to recognise and enforce … the award." *Infrastructure Servs.*, [2023] HCA 11, *supra*, ¶ 8.  The High Court thus rejected the very same intra-EU objection Spain raises here, explaining that Spain's argument that EU law vitiated its "agreement to arbitrate in the [ECT]" "must fail because the relevant agreement arose from Spain's entry into the ICSID Convention," not the ECT, *id.* ¶¶ 78-79. This was true even though under Australian law, only "*express*" waiver can over-come a foreign state's sovereign immunity.  *Id.* ¶ 25 (emphasis added).  *A fortiori*, Spain's waiver overcomes the FSIA's lower bar for waiver "by implication."  28 U.S.C. § 1605(a)(1).   The United Kingdom's Commercial Court subsequently agreed with Australia's High Court, reasoning that "[t]he EU treaties do not trump" Spain's "pre-existing treaty obligations under … the ICSID Convention and the ECT" and ultimately holding that Spain's accession to the ICSID Convention

11

amounted to a waiver of its immunity from award-enforcement actions. *Infrastructure Servs.*, [2023] EWHC 1226 (Comm), *supra*, ¶¶ 67, 91-103.

*Fifth*, the ICSID Convention also imposes obligations on this country, and the FSIA's waiver exception must be construed consistently with those commitments. Nothing in the Convention's text permits the United States to condition enforcement of an ICSID award on a court's independent assessment of the validity of Spain's consent to arbitration. To the contrary, the Convention requires the United States to enforce ICSID awards without permitting "any appeal or … *any other remedy* except those provided for in th[e] Convention." ICSID Convention, art. 53(1) (emphasis added). Declining enforcement on jurisdictional grounds would thus violate the ICSID Convention.

The FSIA is expressly drafted to avoid that result. It grants foreign states jurisdictional immunity only "[s]ubject to existing international agreements to which the United States [was] a party" when the FSIA was enacted in 1976. 28 U.S.C. § 1604. The Convention—ratified by the United States in 1966—is such a pre-existing "international agreemen[t]," *id.*, so the Convention's mandate must control to the extent of any conflict with the FSIA. Further, under settled principles of statutory interpretation, courts in this Circuit must interpret federal statutes "to avoid … conflicts" with preexisting treaties. *Owner-Operator Indep. Drivers Ass'n, Inc. v. U.S.*

*Dep't of Transp.*, 724 F.3d 230, 233-34 (D.C. Cir. 2013).  This Court should therefore reject Spain's invitation to subvert the ICSID Convention's unequivocal directive by pitting it against the FSIA.  Both the FSIA and settled rules of interpretation demand an interpretation of the FSIA's waiver exception that avoids any conflict with the United States' obligations under the ICSID Convention.

## II.    The Arbitration Exception Applies Because ICSID Tribunals' Jurisdictional Decisions Are Entitled To Full Faith And Credit

The FSIA's arbitration exception gives courts jurisdiction over suits brought against a foreign state "to confirm an award made pursuant to … an agreement" by the foreign state, "with or for the benefit of a private party," to "submit to arbitration" where the "award is … governed by a treaty"—such as the ICSID Convention—that is "in force for the United States" and that "call[s] for the recognition and enforcement of arbitral awards."  28 U.S.C. § 1605(a)(6).  Blasket has already explained in its own, separate appeal why the arbitration exception applies to its enforcement action against Spain under the New York Convention:  The validity of Spain's consent to arbitrate is not a jurisdictional issue, and, even if it was, the tribunal's determination that the dispute was arbitrable is entitled to deference under the framework applied to commercial arbitrations.  That reasoning applies equally under the ICSID Convention.  Blasket writes not to repeat those arguments, but rather to explain why Spain's arguments are particularly inappropriate in the ICSID context.

13

In the ICSID context, the Court's obligation to defer to the arbitral tribunal's determination that Spain consented to arbitration is even clearer because the ICSID Convention's implementing statute requires this Court to give the Award "the same full faith and credit" as a state court judgment in "enforc[ing]" the "pecuniary obligations imposed by [the Award]." 22 U.S.C. § 1650a(a). "[F]ull faith and credit," in turn, "has long been understood to encompass ... collateral estoppel, or 'issue preclusion,'" *San Remo Hotel, L.P. v. City & Cnty. of San Francisco*, 545 U.S. 323, 336 (2005), meaning that once a tribunal "decide[s] an issue ... necessary to its judgment," the decision "preclude[s] relitigation of the issue," *Allen v. McCurry*, 449 U.S. 90, 94 (1980). That includes the determination that the ICSID Convention requires the tribunal to make—as "the judge of its own competence"—on "[a]ny objection ... that [a] dispute is not within the jurisdiction of [ICSID], or ... within the competence of the Tribunal." ICSID Convention, art. 41. Courts accordingly are "not permitted to examine ... the ICSID tribunal's jurisdiction to render the award," and "may do no more than examine the judgment's authenticity and enforce the obligations imposed by the award." *Mobil Cerro Negro*, 863 F.3d at 102.

The requirements for issue preclusion are easily satisfied as to Spain's EU-law argument. Issue preclusion prohibits the relitigation of an issue of fact or law that was (1) "contested by the parties and submitted for judicial determination in the prior case" and (2) "actually and necessarily determined by a court of competent

jurisdiction in that prior case," if (3) "preclusion in the second case [does] not work a basic unfairness to the party bound by the first determination." *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992).  In its arbitrations with NextEra, 9REN, and the original holders of Blasket's awards, Spain actively argued that the ECT's arbitration provision does not apply to intra-EU disputes, and that applying it to such disputes would be incompatible with EU law.  Article 41 of the ICSID Convention required those arbitral tribunals to rule on those objections.  And each of the tribunals actually decided the issue, holding, for example, that "nothing in … *Achmea* … could deprive [the] Tribunal … of jurisdiction" because it is "a creature of international law," not EU law.  *Hydro Energy 1 S.à.r.l. v. Kingdom of Spain*, ICSID Case No. ARB/15/42, Decision on Jurisdiction, Liability, and Directions on Quantum ¶ 502(8), (11), (13)-(14), bit.ly/44K850L; *accord* Appellee Br. 19-20.  These jurisdictional holdings were necessary to the tribunals' determinations that they had jurisdiction under the ECT.  Finally, Spain had every "incentive to litigate the point" in the arbitrations, so there is no "unfairness" in binding it. *Yamaha*, 961 F.2d at 254.  Congress's directive to give ICSID awards "full faith and credit," 22 U.S.C. § 1650a(a), thus requires precluding Spain from re-raising its intra-EU objection to the tribunal's jurisdiction.

Spain suggests that because its argument goes to the ICSID tribunals' subject-matter jurisdiction, their awards need not receive full faith and credit.  Appellant Br.

51-52 (citing *Jerez v. Republic of Cuba*, 775 F.3d 419, 423 (D.C. Cir. 2014)).  But that is not the law.  "[A] judgment is entitled to full faith and credit—even as to questions of jurisdiction—when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment."  *Underwriters Nat'l Assurance Co. v. N.C. Life & Accident & Health Ins. Guar. Ass'n*, 455 U.S. 691, 706 (1982) (cleaned up).  When "the [initial] tribunal's subject matter jurisdiction is raised in the original action," its "determination of th[at] issue" is "conclusive under the usual rules of issue preclusion," *Carr v. District of Columbia*, 646 F.2d 599, 607-08 (D.C. Cir. 1980) (alteration omitted), even if the second court "disagrees with the reasoning underlying the judgment," *V.L. v. E.L.*, 577 U.S. 404, 407 (2016).

This is true "even as to questions of ICSID's jurisdiction."  *Tidewater*, 2018 WL 6605633, at *6 n.4.  Where, as here, that issue "has been 'fully and fairly litigated and finally decided' by the tribunal, this Court has no authority to relitigate the matter."  *Id*.  Indeed, even if jurisdiction is not raised before the initial tribunal, "[a] party that has had an opportunity to litigate the question of subject-matter jurisdiction may not … reopen that question in a collateral attack upon an adverse judgment."  *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n.9 (1982).  This "[l]ongstanding precedent bars … attempt[s] to recycle a losing jurisdictional argument."  *Tethyan*, 590 F. Supp. 3d at 276.  *Jerez* reached a different

16

result only because the plaintiff was seeking to enforce a "default judgment," where Cuba did not, and had no opportunity to, contest the first court's jurisdiction. 775 F.3d at 422-23.

Spain also claims that because the ICSID statute requires giving full faith and credit to the "'pecuniary obligations imposed by'" an ICSID Award, ICSID tribunals' jurisdictional determinations do not merit deference. Appellant Br. 52. But, as demonstrated by the fact that Spain is making this argument to escape its "pecuniary obligations," this argument makes little sense, and thus has no authority backing it. The pecuniary obligation is the end result of the arbitration, just as a judgment is the end result of litigation. In the same way that giving a state court monetary judgment full faith and credit requires precluding relitigation of the state court's jurisdiction, so too does giving full faith and credit to the pecuniary obligations of an ICSID award, as numerous courts have held. *See, e.g.*, *Mobil Cerro Negro*, 863 F.3d at 102; *Tethyan*, 590 F. Supp. 3d at 276; *TECO Guatemala Holdings, LLC v. Republic of Guatemala*, 414 F. Supp. 3d 94, 100-02 (D.D.C. 2019).

In a final attempt to avoid the finality of the ICSID awards, Spain says that parties can collaterally attack jurisdictional determinations when the proceeding "'substantially infringed the authority of another tribunal or agency of government.'" Appellant Br. 52 (quoting *Blinder, Robinson & Co. v. SEC*, 837 F.2d 1099, 1104 (D.C. Cir. 1988)). But "[a]ny improper exercise of jurisdiction necessarily

17

intrudes on the power of another tribunal, but not every such intrusion implicates public concerns that outweigh the countervailing interest in finality." *In re Bulldog Trucking, Inc.*, 147 F.3d 347, 354 (4th Cir. 1998). Indeed, if Spain were correct, then an ICSID tribunal's determination of arbitrability never could be given preclusive effect, because *all* arbitrability questions can be formulated as questions concerning the tribunal's "jurisdiction." *Blinder* is not so broad. 837 F.2d at 1103-04. It was merely relying, in *dicta*, on *Kalb v. Feuerstein*, 308 U.S. 433 (1940), which held only that the public concern in ensuring respect for "federal pre-emption" justified withholding full faith and credit from a state-court decision on an issue that Congress committed exclusively to federal courts. *Durfee v. Duke*, 375 U.S. 106, 114 (1963) (distinguishing *Kalb*).

In sum, ICSID's implementing statute directs courts to grant the award full faith and credit, and because Spain could and did contest the tribunal's jurisdiction, the tribunal's determination that it had jurisdiction is binding. Thus, even if the tribunal's jurisdiction were necessary for the court's jurisdiction under the FSIA, the court would be bound to find the tribunal had jurisdiction.

## CONCLUSION

The Court should affirm the district court's decisions and uphold its injunctions against Spain.

Dated:  July 6, 2023                         Respectfully submitted,

                                             /s/ *Matthew D. McGill*

                                             Matthew D. McGill
                                             Matthew S. Rozen
                                             Jeffrey Liu
                                             Lavi M. Ben Dor*
                                             Samuel C. Speers
                                             GIBSON, DUNN & CRUTCHER LLP
                                             1050 Connecticut Avenue, N.W.
                                             Washington, D.C. 20036
                                             (202) 887-3680
                                             MMcGill@gibsondunn.com

                                             *Counsel for Amicus Curiae Blasket*
                                             *Renewable Investments LLC*

                                             * Admitted only in New York and
                                             Pennsylvania; practicing under the
                                             supervision of principals of the firm.

# CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of Federal Rules of Appellate Procedure 32(a)(7)(B)(i) because it contains 4,599 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Circuit Rule 32(e)(1).  This certificate was prepared in reliance on the word-count function of the word-processing system used to prepare this brief.

2.    This brief complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point, Times New Roman font.

Dated:  July 6, 2023                    Respectfully submitted,

                                        */s/ Matthew D. McGill*
                                        Matthew D. McGill
                                        GIBSON, DUNN & CRUTCHER LLP
                                        1050 Connecticut Avenue, N.W.
                                        Washington, D.C. 20036
                                        (202) 887-3680
                                        MMcGill@gibsondunn.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 6, 2023, I served a copy of the foregoing brief on

all counsel of record via this Court's CM/ECF system.

Dated:  July 6, 2023                    Respectfully submitted,

*/s/ Matthew D. McGill*
Matthew D. McGill
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 887-3680
MMcGill@gibsondunn.com